People v M.T. (2025 NY Slip Op 50919(U))

[*1]

People v M.T.

2025 NY Slip Op 50919(U)

Decided on June 5, 2025

Supreme Court, New York County

Drysdale, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 5, 2025
Supreme Court, New York County

The People of the State of New York

against
M.T., Defendant, and Office of Mental Health, Non-Party, Respondent.

IND-70335-25

For the Defendant: Ms. Renate Lunn, New York County Defender Services 
For the People: ADA Davis Rosser, ADA Lauren Angelo New York County District Attorney's Office 
For the Non-Party Respondent: AAG Caroline Wallitt, Office of the Attorney General

Althea E.M. Drysdale, J.

The Defendant, M.T., was arraigned in New York County Criminal Court on October 10, 2024. On December 4, 2024, Defense Counsel requested a mental health and competency examination pursuant to CPL § 730. Subsequently, the People presented the Defendant's case to the Grand Jury. On February 11, 2025, the Defendant was arraigned in New York County Supreme Court on one count of Auto Stripping in the Second Degree pursuant to PL § 165.10(2) and one count of Criminal Mischief in the Fourth Degree pursuant to PL § 145.00(1). At that time, the parties reviewed the contents of the CPL § 730 examination that had been ordered in Criminal Court. The mental health examiners unanimously agreed that the Defendant was unfit to proceed in this matter. In a written Order dated February 11, 2025, the Court remanded the Defendant to the custody of the New York State Office of Mental Health (hereinafter "OMH"). The Court's Order specifically stated that the Defendant was to "be transferred into the custody of the Office of Mental Health no later than March 11, 2025." The Court's Order further stated that "[f]ailure to do so will result in a finding of contempt pursuant to New York Judiciary Law § 753(A) and § 750(A)."
On March 18, 2025, Defense Counsel informed the Court that the Defendant had yet to be moved into the custody of OMH and continued to be confined at Riker's Island. On March 19, 2025, the Court e-mailed the Director of OMH's Bureau of Institutional and Transitional Services to inquire as to the status of the Defendant's transfer. Having received no response, the Court again followed up via e-mail on April 8, 2025. At that time, the Director of OMH's Bureau of Institutional and Transitional Services informed the Court that OMH had yet to take custody of the Defendant and further estimated that the transfer would not occur for an additional five or six weeks.
The Court re-calendared this matter for a hearing to determine whether OMH should be held in contempt based on their failure to comply with the Court's February 11, 2025 Order directing the OMH to take custody of the Defendant no later than March 11, 2025. A contempt hearing was held before the Court on June 4, 2025. At the time of the hearing, the Defendant was still incarcerated on Riker's Island, despite the fact that 85 days had elapsed since the deadline the Court had set for OMH to take custody of the Defendant.
 Conclusions of Law
The Court has the power to fine or otherwise punish a neglect, violation of duty, or other misconduct committed by a party to an action or a special proceeding. Judiciary Law § 753 (A); see also Judiciary Law § 750 (A). In order for the Court to hold a party in civil contempt for disobeying a court order under Judiciary Law § 753 (A), the Court must establish three elements: (1) the existence of a Court order establishing an unequivocal mandate was in effect and was disobeyed, (2) the party knew about the order, regardless of whether it was actually served on the party, and (3) the rights of a party to the litigation were prejudiced. See McCain v Dinkins, 84 NY2d 216 (1994); see also People v. L.G., 83 Misc 3d 1030, 1032—33 (NY Sup. Ct. 2024), aff'd as modified, No. 01411/20, 2025 WL 1437894 (1st Dept., May 20, 2025).
I. Existence of a Court Order Establishing an Unequivocal Mandate
As to the first element, all parties concede that this Court issued an unequivocal Order mandating the Defendant into the custody and control of OMH no later than March 11, 2025. OMH, via the Office of the Attorney General, concedes that they were in receipt of the Court's February 11, 2025 Order. All parties concede that the Court's Order unequivocally stated that OMH was ordered to take custody of the Defendant no later than March 11, 2025. All parties concede that OMH did not take custody of the Defendant by that date. All parties concede that, as of the date of the hearing, the Defendant remained in the custody of the New York City Department of Corrections and was being detained on Riker's Island. Therefore, the Court finds that the first element has been met.
II. The Office of Mental Health Knew About the Order
As to the second element, OMH, through the Office of the Attorney General, concedes that they were aware of the Court's Order. This Court will further take judicial notice that the Order was sent to OMH by the Court on February 11, 2025 when the Defendant was ordered to be remanded into their custody. The Court further provided e-mails exchanged between the Court and the Director of OMH's Bureau of Institutional and Transitional Services in relation to this case, further establishing that OMH was aware of the Court's Order. Therefore, the Court finds that the second element has been met. 
III. The Defendant Has Been Prejudiced
Defendant M.T.'s rights were clearly prejudiced by OMH's non-compliance with the Court's Order. As an initial matter, the Defendant is charged with Auto Stripping in the Second [*2]Degree, a Class E Non-Violent Felony. Considering that this Defendant is not a predicate felon, once restored to competency, the Defendant would be immediately eligible for a non-incarceratory sentence on a plea to the top count of his indictment. However, instead of being transferred to a mental health facility where the Defendant could begin rehabilitative efforts aimed towards restoring his competency, the Defendant has instead remained incarcerated at Riker's Island. OMH's non-compliance with the Court's Order has therefore delayed any further criminal proceedings against the Defendant, thereby causing him prejudice.
IV. Affirmative Defense of Impossibility
In defense of their non-compliance with the Court's Order, OMH stated that they should not be held in contempt due to an asserted infeasibility of obedience. As an initial matter, despite being properly served with the Court's Order on February 11, 2025, at no point before the March 11, 2025 deadline did OMH contact the Court to state their belief that compliance with the Court's Order would be impossible. When the Court inquired about the Defendant's transfer status on March 19, 2025, OMH failed to respond to the Court's inquiry, let alone raise the defense of impossibility. It wasn't until the Court's second outreach to OMH on April 8, 2025, almost one month past the transfer deadline, that OMH stated via e-mail that they would not be able to accept custody of the Defendant for an additional five or six weeks. The first time that OMH raised their affirmative defense of impossibility was at the hearing before this Court on June 4, 2025, eighty-five days after they were required to take custody of the Defendant.
Even if the Court were to consider OMH's delinquent defense of impossibility, the Court finds this argument unpersuasive. In an attempt to show at least partial compliance with the Court's Order, OMH states that, upon receiving the Court's Order on February 11, 2025, they placed the Defendant on a list of individuals to be admitted to Mid-Hudson Psychiatric Facility. At the time the Defendant was placed on the list, he was the seventy-third defendant awaiting placement at that specific facility. Despite multiple inquiries from the Court throughout the contempt hearing, OMH, through the Attorney General's Office, was unable to provide specific details of any additional efforts to place this Defendant in an appropriate psychiatric facility that occurred after February 11, 2025. As of the date of the contempt hearing, OMH reported that there were still eighteen defendants ahead of Defendant M.T. on the list for admission to Mid-Hudson Psychiatric Facility. OMH further stated at the hearing that, based on M.T.'s position on this list, OMH did not intend to accept custody of the Defendant for at least another month. Furthermore, at the hearing, OMH asserted for the first time that M.T. may be eligible for one of twenty-five additional available beds at Manhattan Psychiatric Center, however it appears as though no efforts had been made to either place M.T. on the list for one of those beds at any time prior to the contempt hearing.[FN1]
The evidence proffered by OMH establishes that the [*3]unavailability of beds in psychiatric facilities has been, and continues to be, "a longstanding problem to which OMH [is] statutorily obligated to pursue solutions." See, e.g., People v. L. G., No. 01411/20, 2025 WL 1437894 (1st Dept., May 20, 2025). Simply adding a defendant to a list for admission to a singular psychiatric facility, without seeking out any alternative options, does not qualify as a diligent attempt to comply with this Court's Order. For these reasons, OMH's defense of impossibility fails.
V. Penalty
The Office of Mental Health is ordered to pay a fine of $250 to the Defendant. See, e.g., People v. L. G., No. 01411/20, 2025 WL 1437894 (1st Dept., May 20, 2025).

Conclusion
Justice delayed is justice denied. That statement is especially true for defendants suffering from mental illness, who represent some of the most vulnerable members of our community. Once a defendant is found to be mentally unfit to proceed pursuant to CPL § 730, they must be expeditiously transferred to an appropriately equipped mental health facility where they may be rehabilitated and restored to competency before the criminal case against them may resume. Delays in transferring mentally ill defendants from Riker's Island to a psychiatric facility are not only inhumane, but further undermine the Court's goal of ensuring public safety and effectuating a timely criminal proceeding against the Defendant.
For the reasons stated herein, the Court finds that OMH is in contempt of the Court's Order. This Court therefore imposes a fine of $250.00 upon OMH, to be paid to Defendant M.T.
This constitutes the Decision and Order of the Court.
DATED: June 5, 2025
New York, New York
Hon. Althea E.M. Drysdale, AJSC

Footnotes

Footnote 1:THE COURT: Excuse me. I would like you to chronical for the record exactly what you've done. Don't tell me what would happen, you will shuffle somebody. Tell me in this case what exactly did OMH do, please.
MS. WALLITT: OMH assigned [M.T.] to MidHudson. OMH is cognizant of the fact that [M.T.] may be eligible for some of the 25 additional beds at Manhattan Psychiatric Center. Those opened in February. Because MPC, Manhattan Psychiatric Center, is a civil facility, the only patients that are eligible are the ones that have committed the lesser crimes. He is potentially eligible and OMH is exploring whether he can be on both lists, which would expedite his—
THE COURT: But your exploration should have taken place at the time of the Order. You have not told me anything relative to that which you've done in the affirmative sense to increase the capacity. I'm waiting for it but I've not heard it.
Hearing Minutes at p. 8-9.
[. . .]
THE COURT: So let the record reflect that this Court did give the Attorney General's Office an opportunity to make a number of phone calls and we second called the case.
Now, Ms. Wallitt, I'd like to know, specifically, what date was the Defendant placed on the list, the list that you alluded to, what date was that? Do you have a date certain as to when the Defendant was placed on the list?
MS. WALLITT: No, your Honor, I do not.
Hearing Minutes at p. 15.